**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Matthew Pollack and Lana Pollack, husband and wife; Tanner Pollack, a minor child,<br><br>  Plaintiffs,<br><br>vs.<br><br>Brad Narreau and Jane Doe Narreau, husband and wife; City of Coolidge, a municipality; John and Jane Does 1-X,<br><br>  Defendants. | No. CV-08-0092-PHX-DGC<br><br>**ORDER** |

Defendants have filed a motion for summary judgment on all of Plaintiffs' claims. Dkt. #32. Plaintiffs have filed a response and Defendants have replied. Dkt. ## 38, 42. The Court will grant the motion in part and remand this case to state court.

**I.   Background.**

At approximately 2:00 a.m. on February 28, 2007, Plaintiff Matthew Pollack, a private security guard for Tin Star Protection, was conducting surveillance at a construction site. Defendant Brad Narreau, a City of Coolidge police officer looking for copper wire thieves, directed a light into the area where Pollack was sitting in his parked car. Pollack flashed his car lights back at Narreau. Narraeu assumed that Pollack was another police officer, drove up alongside Narreau, and began a conversation.

1  Pollack's vehicle was a decommissioned police vehicle purchased at auction. Narreau
2 thought it was similar to undercover police cars because it was a newer model White Crown
3 Victoria without any law enforcement signage or roof mounted emergency lights and it had
4 four or five antennas on the roof. Narreau observed either a mobile data terminal or laptop
5 computer attached to the center console and a spotlight mounted on the driver's side
6 windshield frame with a pair of handcuffs hanging from the handle. Believing that Pollack
7 was a police officer, Narreau asked him where he was employed.

8  Pollack states that he told Narreau he was not a police officer, but a private employee
9 of Tin Star Protection. Dkt. #38 at 2. According to Pollack, Narreau was surprised that Tin
10 Star Protection would hire a non-officer because a detention officer friend of his had been
11 denied a position with the company. As the conversation continued, Pollack told Narreau
12 that he was a reserve dispatcher with the Kearny Police Department. *Id.* at 3. Pollack also
13 mentioned that he had applied to join the Maricopa County Sheriff's volunteer pose, but had
14 been rejected. *Id.* at 4.

15  Narreau asserts that Pollack told him that he was working for Tin Star Protection at
16 the time, but that he was also a dispatcher for the Town of Kearny and a deputy with the
17 Maricopa County Sheriff's posse. Dkt. #32 at 3. As Narreau left the scene, he noticed that
18 the license plate on Pollack's vehicle was "G 647AB." Narreau recognized this as a
19 personalized plate and not a government plate and checked the registration. Narreau was
20 informed that the plate was registered to Matthew Pollack. Narreau called the Kearny Police
21 Department and was told that Pollack was no longer an employee. *Id.* at 4. Defendants also
22 contend that Narreau called the Maricopa County Sheriff's Office and was told that Pollack
23 had been rejected for employment. *Id.*

24  Narreau returned to speak with Pollack. Pollack states that when Narreau returned he
25 noticed that Pollack had been playing video games on the lap-top screen and stated that he
26 was unaware that "MDT's" (mobile data terminals) could be used to play video games.
27 Pollack told Narreau that the screen was not a MDT, but his own personal laptop computer.
28 Dkt. #38 at 5. Narreau told Pollack that he had called someone at the Maricopa County

1 Sheriff's Office and had been told that Pollack had been fired in September. Pollack
2 responded that they could not have fired him because he never worked there. *Id.* Narreau
3 then told Pollack that someone at the Kearny Police Department said he had been fired.
4 Pollack disagreed, stating that he had never been fired from Kearny and that he had recently
5 spoken to Chief Joseph Martinez regarding his status there. *Id.* Narreau told Pollack to step
6 out of the vehicle because he was being arrested for impersonating an officer. *Id.*

7 Pollack contends that after he was arrested, handcuffed, and placed in the police
8 vehicle, he told Narreau that the handcuffs were too tight and were causing him pain.
9 Dkt. #38 at 5. Narreau responded that handcuffs "are not meant to be comfortable" and told
10 Pollack to sit sideways. *Id.* at 5-6. Pollack asserts that he was unable to sit sideways because
11 of his large stature and was forced to remain in pain for approximately 30 minutes. Pollack
12 had pain and indentations on his wrists for two hours after the handcuffs were removed.

13 Following the arrest, Pollack's vehicle and its contents were seized for 41 days before
14 being returned. Plaintiffs contend that Narreau kept Pollack's property for more than two
15 weeks after the County Attorney had instructed Narreau to return it. *Id.* at 7-8. In addition,
16 Pollack asserts that some of his property was never returned, including three orange traffic
17 pylons, a leather shoulder holster for his handgun, a cooler, the personalized license plate,
18 and a few DVDs. *Id.* at 8.

19 Shortly after Pollack's arrest, a Law Enforcement Sensitive Bulletin containing details
20 of the arrest was distributed through a law enforcement e-mail network, which included all
21 police agencies in the state of Arizona as well as the Arizona Counter-Terrorism Information
22 Center. Later, details of Pollack's arrest were published in a Monthly Activity Report and
23 distributed to the Florence City Council and made available to the general public. Pollack
24 contends that Narreau contributed to this publication by conveying the information
25 concerning the arrest to investigating sergeant Jimmy Walker. *Id.* Narreau asserts that he
26 was not involved in the publication of either document. Dkt. #33 at 8.

27 On April 10, 2006, Pollack was issued a citation for providing false information to a
28 police officer. Pollack was later acquitted of this charge in a criminal trial. Pollack brought

- 3 -

this case on December 21, 2007, alleging violations of 42 U.S.C. § 1983 and state law claims for false imprisonment, assault and excessive force, defamation, conversion of property, negligent infliction of emotional distress, and negligent hiring, retention, and supervision.

## II.     Legal Standard.

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III.    Section 1983 Claims.

Defendants move for summary judgment on Plaintiffs' § 1983 claims and argue that both Narreau and the City of Coolidge are entitled to immunity. In determining whether a state actor is entitled to qualified immunity, the Court first asks whether the plaintiff has made a *prima facie* showing that the state actor violated the plaintiff's constitutional rights. *Orin v. Barclay*, 272 F.3d 1207, 1214 (9th Cir. 2001); *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 129 S. Ct. 808, 821-22 (2009) (holding that the *Saucier* procedure is not mandatory, but often advantageous). If the facts alleged show a constitutional violation, the court next determines whether the law was clearly established. *Saucier*, 533 U.S. at 201. Finally, if the law was clearly established but the state actor made a mistake regarding what the law required, the officer will be entitled to immunity if the mistake was reasonable. *Id.* at 205.

Plaintiffs assert violations of the Fourth Amendment based upon unlawful arrest and excessive force. Plaintiffs also assert claims for defamation and seizure of property without due process of law. The Court will address these § 1983 claims separately.

### A.     Unlawful arrest.

Under the Fourth Amendment, a warrantless arrest is constitutional if it is based on probable cause. *United States v. Thornton*, 710 F.2d 513, 515 (9th Cir. 1983) (citing *Gerstein v. Pugh*, 420 U.S. 103, 111-14 (1975)). In *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001), the Supreme Court held that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may,

1 without violating the Fourth Amendment, arrest the offender." *Id*. at 354.  Probable cause 2 is "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in 3 believing that the suspect had committed or was committing an offense.'" *Gerstein*, 420 U.S. 4 at 111-12 (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).  "All facts known to the arresting 5 officer and all reasonable inferences that could be drawn are considered." *Thornton*, 710 6 F.2d at 515.

7 "Where there is no factual dispute, probable cause is always a question of law for the 8 [C]ourt." *Hansen v. Garcia*, 713 P.2d 1263, 1265 (Ariz. Ct. App. 1986); *see Gasho v. United* 9 *States*, 39 F.3d 1420, 1248 (9th Cir. 1994).  An acquittal on the underlying criminal charge 10 does not show that the arrest was made without probable cause. *See Picray v. Sealock*, 138 11 F.3d 767, 772 (9th Cir. 1998) ("The officers could reasonably have found that they had 12 probable cause to arrest Picray for trespass.  The fact that he was subsequently acquitted of 13 that charge is not determinative of qualified immunity."); *Borunda v. Richmond*, 885 F.2d 14 1384, 1389 (9th Cir. 1988) ("The fact that plaintiffs had been previously acquitted in the 15 criminal case is far removed from establishing whether probable cause existed for their 16 arrests.").

17 Narreau arrested Pollack for the offense of impersonating a peace officer.  A.R.S. 18 § 13-2411(A) provides that a person "commits impersonating a peace officer, if the person, 19 without lawful authority, pretends to be a peace officer and engages in any conduct with the 20 intent to induce another to submit to the person's pretended authority or to rely upon the 21 person's pretended acts."  Narreau did not have probable cause to arrest Pollack under this 22 statute.  Even if the facts would have led a reasonable person to conclude that Pollack was 23 pretending to be a police officer, there was no suggestion that Pollack intended that anyone 24 rely on him as a police officer or submit to his authority.

25 Defendants also argue Narreau had probable cause to arrest Pollack for providing false 26 information to a police officer.  Narreau did not tell Pollack that he was being arrested for 27 this offense, although it was later charged by the prosecutor.  Plaintiffs argue that probable

28

1  cause for this offense did not exist, but they do not dispute that the arrest could be justified
2  by this offense if probable cause existed.

3  The Ninth Circuit has adopted the "closely related offense" doctrine when applying
4  qualified immunity to § 1983 claims. *See Bingham v. City of Manhattan Beach*, 341 F.3d
5  939, 949-53 (9th Cir. 2003). The doctrine holds that "[p]robable cause may still exist for a
6  closely related offense, even if that offense was not invoked by the arresting officer, as long
7  as it involves the same conduct for which the suspect was arrested. It is immaterial that the
8  officer did not have in mind the specific charge upon which the arrest can be justified."
9  *Gasho*, 39 F.3d at 1428 n.6. Even when the closely related offense doctrine does not strictly
10 apply, the Ninth Circuit has found probable cause sufficient to support qualified immunity
11 when the arresting officer knew of facts that would have led a reasonable officer to make the
12 arrest under clearly established law. *Bingham*, 341 F.3d at 952.

13 A.R.S. § 13-2907.01 provides that "[i]t is unlawful for a person to knowingly make
14 to a law enforcement agency . . . a false, fraudulent or unfounded report or statement or to
15 knowingly misrepresent a fact for the purpose of interfering with the orderly operation of a
16 law enforcement agency or misleading a peace officer." In describing the nature of this
17 crime, Arizona courts have not held that false statements must always be accompanied by an
18 intent to interfere with a law enforcement agency or to mislead a police officer. The first part
19 of this statute can be violated merely by providing false information. The crime "consists
20 essentially of the communication of a falsehood to a law enforcement agency." *In re*
21 *Victoria K.,* 11 P.3d 1066, 1069 (Ariz. Ct. App. 2000).

22 On the night in question, Pollack told Narreau that he was employed as a reserve
23 dispatcher for the Kearny Police Department. Narreau subsequently was informed by an
24 employee of that department that Pollack no longer worked there. This information provided
25 reasonable grounds for Narreau to conclude that Pollack had provided false information, a
26 crime under Arizona law. *Id*. For probable cause purposes, it is irrelevant that Pollack
27 believed his statement to be true or that the department employee might have been mistaken.
28

1  A reasonable, objective person possessing Narreau's information would have believed that
2  Pollack had committed the crime of false reporting.

3  Moreover, because the false statement arose out of the same conduct as the purported
4  impersonation of a police officer, the closely related offense doctrine applies.  Thus,
5  Narreau's arrest of Pollack was supported by probable cause even though Narreau did not
6  assert the false reporting offense at the time of the arrest.  *Bingham*, 341 F.3d at 949-53.
7  Because the arrest was supported by probable cause, Pollack has not demonstrated a
8  constitutional violation resulting from an unlawful arrest.

9  **B.  Excessive force.**

10  In assessing Plaintiffs' claim for excessive force, the Court must ask whether the
11  officer's actions were objectively reasonable "in light of the facts and circumstances
12  confronting [the officer], without regard to [his] underlying intent or motivation." *Graham*
13  *v. Connor*, 490 U.S. 386, 397 (1989).  "Not every push or shove, even if it may later seem
14  unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.*
15  (citation and quotation marks omitted).

16  Pollack was arrested, handcuffed, and placed in the police car.  Pollack told Narreau
17  the handcuffs were too tight.  Narreau declined to loosen them.  When the handcuffs were
18  removed approximately 30 minutes later, Pollack had indentations on his wrists and suffered
19  pain for two hours.  Even viewing these facts in the light most favorable to Plaintiffs, the
20  force used by Narreau does not rise to the level of a constitutional violation.  Pollack was not
21  significantly injured and did not seek medical attention for his wrists.  The slight injury that
22  Pollack received was gone within two hours.  Pollack fails to meet the threshold for an
23  excessive force claim.  *See, e.g., Freeman v. Gore*, 483 F.3d 404, 416-17 (5th Cir. 2007)
24  (bruising on wrists and arms because handcuffs were applied too tightly is a minor, incidental
25  injury in connection with the use of handcuffs to effectuate an arrest and does not give rise
26  to a constitutional claim for excessive force); *Cortez v. McCauley*, 478 F.3d 1108,  1129
27  (10th Cir. 2007) (too-tight handcuffs leaving red marks that were visible for days afterwards
28  is insufficient as a matter of law to support an excessive force claim if the use of handcuffs

- 7 -

is otherwise justified); *Gilles v. Davis*, 427 F.3d 197, 208 (3d Cir. 2005) (complaints of pain that handcuffs were too tight where plaintiff did not seek medical treatment after the fact constitute insufficient evidence as a matter of law for excessive force by handcuffing). Pollack's injuries do not rise to the level of the nerve damage or weeks-long bruising that occurred in the cases he cites. *See Wall v. County of Orange*, 364 F.3d 1107, 1109-10 (9th Cir. 2004); *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993). Pollack's § 1983 claim based on excessive force fails as a matter of law.

### C. Defamation.

Defendants' motion for summary judgment asserts that Plaintiff cannot make a claim for defamation because (1) Pollack did not lose his security guard job as a result of the alleged defamatory statements and (2) Plaintiffs have not shown that the stigma created by the allegedly defamatory statements was accompanied by some additional deprivation of liberty or property as required by the "stigma-plus" test of *Paul v. Davis*, 424 U.S. 693, 701-02 (1976). Dkt. #32 at 12-13; *see also Miller v, California*, 355 F.3d 1172, 1178 (9th Cir. 2004). Plaintiffs do not respond to this argument. They do not address the "stigma-plus" test, nor do they present evidence that Pollack lost his job as a result of the alleged defamatory statements. The Court will grant summary judgment in favor of Defendants on this issue.[1]

### D. Due process property claim.

Pollack claims that Defendants held his car and personal property for 41 days and failed to return a few personal items, all without due process of law. Although wrongful seizure claims under § 1983 often are based on an alleged lack of probable cause, Pollack appears to base his claim on a denial of due process. The wrong described in Plaintiffs' complaint is "depriving Mr. Pollack of his property without due process of law." Dkt. #1,

---

[1] Plaintiffs fail to respond to Defendants' statement of facts as required by the Court's local rules. *See* LRCiv 56.1(b)(1). Defendants' assertion that Pollack was not fired on the basis of the allegedly defamatory statements is supported by the deposition testimony of Pollack's former employer and is not controverted by Plaintiffs. *Compare* Dkt. #33, ¶ 21 *with* Dkt. #39. This fact is therefore deemed admitted by Plaintiffs. LRCiv 56.1(b).

- 8 -

¶82(D). Plaintiffs' response to the summary judgment motion mentions the Fourth Amendment and asserts a lack of probable cause, but culminates in this assertion: "Consequently, Defendants deprived Mr. Pollack of his property without due process of law for a total of forty-one days." Dkt. #38 at 16. Later, the response characterizes the claim as a "claim of conversion of property, pursuant to 42 U.S.C. § 1983." *Id.* at 17. Taking Plaintiffs' complaint at its word, the Court concludes that Plaintiffs are asserting a due process claim with respect to the property seized and held by Defendants.

Plaintiffs cannot assert a procedural due process claim under § 1983 for deprivation of property when state law affords an adequate remedy for conversion. *See Hudson v. Palmer*, 468 U.S. 517, 533-33 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Plaintiffs do not dispute that Arizona law affords them an adequate conversion remedy. Indeed, Count Four of Plaintiffs' complaint asserts a claim for state-law conversion. Dkt. #1, ¶¶ 74-80.[2]

### E. Section 1983 conclusion.

Plaintiffs have failed to establish constitutional violations. The Court therefore will grant summary judgment on their § 1983 claim.

## IV. Remand to State Court.

With the § 1983 claim eliminated, the basis for this Court's federal question jurisdiction no longer exists. Under the relevant statute, 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed

---

[2]Even if Plaintiffs' complaint could be liberally construed as asserting a wrongful seizure claim under the Fourth Amendment, it would fail. Pollack's vehicle was transported to the police station when Pollack was arrested (pursuant to probable cause). It clearly was reasonable for Defendants to secure Pollack's vehicle when they arrested him. The subsequent search of the vehicle is not at issue. Plaintiffs complain about the retention of the vehicle and its contents, not about the search. Plaintiffs do not dispute Defendants' factual assertion that the property was retained on instructions from the County Attorney's office. *See* Dkt. 33, ¶23. Plaintiffs do claim that the property was retained longer than necessary and some items were not returned, but this is a classic claim for conversion of property, not a claim under the Fourth Amendment. Indeed, as noted above, Plaintiffs refer to this claim as one for "conversion." Dkt. #38 at 17.

all claims over which it has original jurisdiction." The Supreme Court has instructed that "'if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.'" *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.*

This case was removed from Pinal County Superior Court. Dkt. #1. In such a case, "remand . . . will better accommodate [*Gibbs*'] values than will dismissal of the case, [and] the animating principle behind the pendent jurisdiction doctrine supports giving a district court discretion to remand when the exercise of pendent jurisdiction is inappropriate." *Carnegie-Mellon*, 484 U.S. at 351. The Court concludes that considerations of economy, fairness, and comity favor remand to state court. *See id.* at 350 n. 7. Arizona courts have greater interest and expertise in resolving Arizona state law claims. Additionally, remand will benefit the federal system by allowing this Court to devote its scarce resources to resolving federal issues. The Court concludes that the merits of Plaintiffs' state law claims, including arguments made in the summary judgment briefing with respect to those claims, should be addressed by the state court.

**IT IS ORDERED:**

1. Defendants' motion to for summary judgment (Dkt. #32) is **granted** with respect to Plaintiffs' claims under 42 U.S.C. § 1983.

2. This case is remanded to Pinal County Superior Court.

DATED this 20th day of March, 2009.

*/s/ Daniel G. Campbell*
———————————————
David G. Campbell
United States District Judge